Filed 6/20/22  P. v. Nguyen CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093222 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 02F11038) |
| SUTTER NGUYEN, | |
| Defendant and Appellant. | |

A jury found defendant Sutter Nguyen guilty of second degree murder and two counts of attempted murder.  The trial court sentenced defendant to nine years four months for the attempted murders and 15 years to life for the murder.  This court affirmed the judgment.  (*People v. Pham* (Jan. 22, 2008, C049751, C049992) [nonpub. opn.] (*Pham*).)[1]

Defendant filed a petition for resentencing under Penal Code section 1170.95[2] and requested appointment of counsel.  The trial court denied the petition, concluding defendant was not eligible for resentencing as he was not convicted on a felony murder

---

[1] We granted defendant's request to incorporate by reference the records in prior appeals *People v. Pham et al.* case No. C049751 and *People v. Nguyen* case No. C049992.

[2] Undesignated statutory references are to the Penal Code.

1

or natural and probable consequences theory. Although defendant had not sought resentencing on his attempted murder convictions, the trial court also noted that section 1170.95 did not apply to attempted murder convictions.

Defendant now contends (1) the trial court erred in denying the petition because the evidence, the prosecution's theory of guilt, and the jury instructions in substance pertained to the theory of aiding and abetting based on the natural and probable consequence doctrine, and (2) section 1170.95 applies to his attempted murder convictions under Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775).[3]

We conclude defendant is not eligible for relief under section 1170.95 because his murder and attempted murder convictions are not based on the felony-murder doctrine or a natural and probable consequences theory. We will affirm the order denying defendant's petition for resentencing.

BACKGROUND

The People charged defendant and two codefendants, Bruce Huy Phan and Lamson Trong Pham, with the murder of Alan Khamphoumy. (§ 187) Personal use and discharge of a firearm causing great bodily injury or death was also alleged. (§ 12022.53, subds. (b)-(d)). In addition, the People charged defendants with the attempted murders of T.T. and V.D. (§§ 664/187) along with the same firearm allegations. A jury found defendant guilty of second degree murder and two counts of attempted murder. The jury found each of the firearm enhancement allegations not true. (*Pham, supra*, C049751, C049992.)

---

[3] In supplemental briefing, defendant also argued that the trial court violated his due process rights by considering the record of conviction at the prima facie stage of the proceedings. In light of the Supreme Court's subsequent decision in *People v. Lewis* (2021) 11 Cal.5th 952, defendant now concedes that, after appointing counsel and allowing briefing, the trial court was permitted to consider the record of conviction at the prima facie stage. Accordingly, we will not address this claim.

2

## A

We summarize the relevant facts underlying the convictions from this court's unpublished opinion affirming the convictions.

A Laotian family held a birthday party for a teenage girl at their home. The night of the party, "Boy," a leader and "shot caller" of a Vietnamese gang, met at a park with codefendants Pham and Phan. Defendant joined them later. Boy told the group about the party and that a rival gang, affiliated with a Laotian gang, would be there. Boy was a suspect in two shootings against rival gangs, one of which was the gang he thought would be at this party. (*Pham, supra*, C049751, C049992.)

At the party, the two groups faced each other across the driveway of the home, and the Vietnamese group challenged the Laotian group to a fight with a gang taunt. After one of the Laotians responded with gang initials, the Vietnamese group pulled out their guns and started shooting. T.T., a Laotian gang member, was shot in the stomach, V.D. was shot in the hip and leg, and Khamphoumy was shot and killed. (*Pham, supra,* C049751, C049992.)

Police stopped codefendants Pham and Phan as they left the scene and officers found two guns in their vehicle. Both guns were connected to casings found at the crime scene. Phan's fingerprints were on a gun that was matched to the bullet that killed Khamphoumy, and gunshot residue was found on his palm. Pham and Phan both admitted they were at the party and had fired guns but claimed they did so in self-defense or defense of others. Pham denied involvement in the Vietnamese gang but knew defendant had previously been a member of the gang. Pham said he carried a gun to the party to impress girls and only fired after someone shot at him. Phan testified he was not a member of the Vietnamese gang; he said he also carried a gun to impress girls. He said he fired only in defense of Pham. (*Pham, supra*, C049751, C049992.)

Defendant, a validated member of the Vietnamese gang, denied he was at the party that night or had anything to do with the crimes. Some witnesses placed defendant at the

3

party while others testified they did not see him there. There was testimony that defendant did not have a gun, but also testimony that he had a gun and fired it. (*Pham, supra*, C049751, C049992.)

The prosecution's theory of the case was that defendants were involved in a Vietnamese street gang, went looking for a confrontation with rival gang members, and shot at unarmed people. (*Pham, supra*, C049751, C049992.) The prosecutor argued Boy had a practice of catching rival gangs "slipping" and attacking the gangs when they were not expecting it; and that Boy and codefendants went to this party for that reason, to attack a rival gang when it was not expected. According to the prosecutor, Boy took people to the party who would have his back; Boy met the others at the park, told them about the party and that the rival gang would be there; they went to the party carrying guns, expecting a rival gang to be there, and intending to create a confrontation with them. The prosecutor said they went to the party armed, issued a challenge to other gang members, got the expected response, and started shooting. The prosecutor did not argue there was a predicate felony which could serve as the basis for felony murder, and did not argue there was a target offense which could serve as the basis for a natural and probable consequences theory of accomplice liability. Rather, the prosecutor argued defendant directly aided and abetted murder and attempted murder. The jury was instructed on direct aider and abettor liability.

The People did not charge defendant with felony murder or under a natural and probable consequences theory. Nor did they charge defendant with any predicate felony or potential target offense; he was charged with one murder and two attempted murders. The jury was not instructed on either the natural and probable consequences or felony-murder theories, and it was not instructed on any predicate felony for felony murder or on any target crime upon which a natural and probable consequences theory of accomplice liability could be predicated.

4

The trial court sentenced defendant to nine years four months for the attempted murders and 15 years to life for the murder. Defendant appealed his convictions and this court affirmed the judgment.

B

In May 2019, defendant filed a petition for resentencing under section 1170.95. Defendant's petition alleged that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of second-degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of second degree murder because of changes made to section 188 and section 189, effective January 1, 2019.

Defendant's petition further alleged that he was not the actual killer; that he did not act with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the second degree; that he was not a major participant in the underlying felony or did not act with reckless indifference to human life; and that the victim was not a peace officer.

The trial court appointed counsel and the parties submitted briefing. After considering the parties' briefing and reviewing the trial court's underlying file as well as this court's unpublished opinion in *Pham*, the trial court concluded that defendant was convicted as a direct aider and abettor to second degree murder, not under a theory of felony murder or murder under the natural and probable consequences doctrine. It noted the jury was not instructed on those theories. The trial court also ruled that the statute did not apply to defendant's attempted murder convictions. Accordingly, the trial court found defendant ineligible for relief under section 1170.95 and denied the petition.

5

DISCUSSION

A

The Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) The bill amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2 & 3.) It also added a new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

Senate Bill 1437 redefined malice under section 188 to require that a principal acted with malice aforethought. Section 188, subdivision (a)(3) now provides in relevant part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

Section 189 was amended to include new subdivision (e), which provides: "(e) A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[; and] [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 15, § 3.)

6

Section 1170.95 allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, former subd. (a).)

Senate Bill 775 was signed into law on October 5, 2021, and clarifies that the petition process under section 1170.95 includes individuals convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a); see Stats. 2021, ch. 551, § 1.) Senate Bill 775 was passed as nonurgency legislation during the regular session and became effective on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c)(1); see also *People v. Camba* (1996) 50 Cal.App.4th 857, 862.) We need not decide here whether it is an ameliorative statute under *In re Estrada* (1965) 63 Cal.2d 740, 748, or a clarification of law which may be applied to acts predating its enactment (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *People v. Lee* (2018) 24 Cal.App.5th 50, 57). In either case, defendant is entitled to the benefit of the new provisions to section 1170.95.

B

As defendant acknowledges, the trial court properly considered the record of conviction, including this court's unpublished opinion in *Pham*, in determining that defendant did not make a prima facie claim for relief under section 1170.95. (*People v. Lewis, supra*, 11 Cal.5th at pp. 971-972; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [jury instructions are part of the record of conviction].) "[W]hen the charged

7

offense and the intended offense -- murder or attempted murder -- are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator. [¶] Aider and abettor liability is thus vicarious only in the sense that the aider and abettor is liable for another's actions as well as that person's own actions. When a person 'chooses to become a part of the criminal activity of another, [they say] in essence, "your acts are my acts . . . ." ' [Citation.] But that person's own acts are also [their] acts for which [they are] also liable. Moreover, that person's mental state is [their] own; [they are] liable for [their] mens rea, not the other person's." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)

" 'When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." [Citation.]' " (*People v. McCoy, supra*, 25 Cal.4th at p. 1118.) The requirement under a direct aiding and abetting theory that the aider and abettor know and share the murderous intent of the actual perpetrator is "satisfied by proof that the actual perpetrator ' "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life." ' [Citation.] Therefore, notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile* (2020) 10 Cal.5th 830, 850.)

Contrary to defendant's claim, the prosecutor did not in essence argue a natural and probable consequences theory of the case. Rather, the prosecutor argued defendant directly aided and abetted the murder and attempted murders. The trial court instructed the jury on direct aider and abettor liability. The only offenses charged were the murder

8

and the two attempted murders. The prosecutor argued defendant knew the full extent of Boy's criminal purpose and aided Boy with the intent to further that purpose; that is, the intent to provoke an armed confrontation with a rival gang at a birthday party. Defendant knew this conduct endangered the lives of others and acted with conscious disregard for life. This is a direct aider and abettor theory of liability, not a natural and probable consequences theory.

That defendant was convicted under a direct aider and abettor theory of liability is further demonstrated by the jury instructions given. " '[J]ury instructions given at a petitioner's trial may provide "readily ascertainable facts from the record" that refute the petitioner's showing,' permitting a trial court to determine that a petitioner is not entitled to relief." (*People v. Daniel* (2020) 57 Cal.App.5th 666, 676, (*Daniel*).) Petitions for resentencing may be denied if the jury instructions show the jury was not instructed on either the natural and probable consequences or felony murder doctrines. (*Id*. at p. 677.)

Here, the jury was not instructed on felony murder[4] or murder based on the natural and probable consequences doctrine. The jury was instructed on direct aiding and abetting principles, which are not affected by either Senate Bill 1437 or Senate Bill 775. "The given instructions demonstrate that [defendant] was convicted of second degree murder on a theory that survives Senate Bill No. 1437's changes to sections 188 and 189. [Citation.] . . . Thus, [defendant] is not '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' and he is therefore ineligible for relief as a matter of law." (*Daniel, supra*, 57 Cal.App.5th at p. 677, fn. omitted.) Similarly, as to defendant's attempted murder convictions, the jury was not presented

---

[4] Because the jury was not instructed on the felony-murder rule and defendant was not charged with a predicate felony that could serve as the basis for felony murder, section 189, subdivision (e) does not apply to this case. (*People v. Gentile, supra*, 10 Cal.5th at p. 848.) Accordingly, we reject defendant's claim that the trial court was required to determine whether defendant was eligible for relief under section 189, subdivision (e).

9

with a theory of liability for attempted murder that could be deemed potentially erroneous when the modification of section 1170.95 became effective. (See *Daniel*, at p. 677.) Thus, defendant is not a person convicted of attempted murder under the natural and probable consequences doctrine and he is ineligible for relief under Senate Bill 775.[5]

Nor are we persuaded by defendant's argument that because the jury instruction on implied malice contained the words " 'natural consequences of the act are dangerous to human life,' " the jury could have convicted him of murder on a natural and probable consequences theory. The fact that the instruction on implied malice and second degree murder[6] contained natural consequences language does not mean the jury was instructed on natural and probable consequences murder. We conclude the trial court properly relied on *People v. Soto, supra*, 51 Cal.App.5th 1043, 1059, to conclude the " 'natural consequences' " language in the instructions "does not transform [defendant's] conviction into one for murder under the natural and probable consequences doctrine

---

[5] In supplemental briefing, the People contend defendant must file a new petition for resentencing in the trial court before we can reach this issue. Defendant acknowledges he could file a new section 1170.95 petition in light of Senate Bill 775, but argues that if we will remand on the murder conviction, we should also remand on the attempted murder convictions. Defendant is ineligible for relief on the attempted murder convictions for the same reasons he is ineligible for relief on the murder conviction. Accordingly, we agree efficiency is better served by our addressing the matter in this appeal, rather than requiring defendant to file a new petition in the trial court.

[6] The court instructed the jury with CALJIC No. 8.11, which provides in relevant part: "Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." The court also instructed the jury with CALJIC No. 8.31, which provides in part: "Murder of the second degree is the unlawful killing of a human being when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life."

within the meaning of section 1170.95." Implied malice murder and natural and probable consequences murder are two distinct concepts. (*Id*. at pp. 1055-1059.) Implied malice is a mental state necessary for second degree murder, either as a principal or direct aider and abettor, and the natural and probable consequences doctrine was a theory of liability by which an aider and abettor who intends to aid a less serious target crime could be convicted of a greater crime committed by his confederate. Because the jury was not instructed on any target crime upon which second degree murder based on a natural and probable consequences theory could be predicated, defendant was necessarily convicted as a direct aider and abettor to second degree murder.

## DISPOSITION

The order denying defendant's section 1170.95 petition for resentencing is affirmed.

/S/
MAURO, J.

We concur:

/S/
ROBIE, Acting P. J.

/S/
RENNER, J.